[Civ. No. 163. First Appellate District.—November 21, 1906.]

## W. D. MOODY, Respondent, v. G. PEIRANO, Appellant.

SALES—SEED WHEAT—BREACH OF WARRANTY OF SPECIAL VARIETY— PLEADING—SUFFICIENCY OF COMPLAINT—DAMAGES.—A complaint alleging that plaintiff applied to defendant to purchase a special variety of seed wheat for planting known as "White Australian"; that defendant sold to plaintiff twenty-seven thousand seven hundred and sixty pounds of seed wheat, representing and warranting it to be of that variety; that relying upon said warranty, he planted the same; and that the seed wheat so sold and planted was not of that variety, but was another and inferior variety, and produced a crop of hay inferior to that which would have been grown had it been "White Australian" seed wheat, by reason of which plaintiff was damaged in the sum of $3,000, states a cause of action for breach of warranty, entitling plaintiff to at least nominal damages; and it cannot be urged upon general demurrer that if any damages were sustained they were special, and should have been specially pleaded.

ID.—FINDINGS FOLLOWING COMPLAINT—SUPPORT OF JUDGMENT—AMOUNT OF DAMAGES—EVIDENCE NOT OBJECTED TO.—Findings following the complaint are sufficient to support a judgment for plaintiff. The amount of the judgment for damages is to be determined by the evidence in support of it, and where no objection was made to such evidence, the finding thereon is conclusive.

ID.—EVIDENCE—SIMILAR WARRANTIES OF SAME WHEAT—RELEVANCE —PROBABILITY OF WARRANTY IN ISSUE—CROSS-EXAMINATION—RE- BUTTAL—DISCRETION.—Evidence of similar warranties made by

the defendant to other purchasers of the same inferior variety of seed wheat as being ''White Australian'' would be admissible in chief, as relevant to the probability of the warranty in issue denied by defendant; and it was within the discretion of the court to allow the defendant to be questioned on cross-examination as to whether such warranties were made by him upon sales of such wheat to third persons named, and upon his denial thereof to allow the same to be proved in rebuttal, to discredit his testimony.

ID.—LIMITS OF IMPEACHMENT UPON COLLATERAL MATTER—RELEVANCE TO ISSUE—ALTERNATIVE.—It is only when the cross-examination of a witness is in reference to collateral matters which are irrelevant to the issue that the witness cannot be impeached by contradictory evidence. If the collateral fact is relevant to the issue, it may be shown either by the cross-examination of a witness for the purpose of contradicting him, or it may be shown by direct evidence of the fact.

ID.—TEST OF ADMISSIBILITY—TENDENCY OF EVIDENCE—PROVINCE OF JURY.—Though evidence should always be confined to the issue, it need not bear directly upon it. It is admissible if it tends to prove the issue, or constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it. The strength of such tendency, or the amount of its weight, is to be determined by the jury.

ID.—DISCRETION IN DETERMINING RELEVANCY.—In determining the relevancy of evidence offered upon an issue of fact, much depends upon the nature of the issue upon which it is offered, and a wide discretion is left to the trial judge in determining whether it is admissible or not. No precise or universal test of relevancy is furnished by the law. If the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy, it should go to the jury.

APPEAL from a judgment of the Superior Court of Santa Clara County, and from an order denying a new trial. A. L. Rhodes, Judge.

The facts are stated in the opinion of the court.

William P. Veuve, for Appellant.

Warranties in favor of third parties are *res inter alios acta,* and inadmissible. (1 Greenleaf on Evidence, sec. 52; 1 Wharton on Evidence, sec. 29; Chamberlain's Best on Evidence, sec. 500 et seq. and American notes; *Martinez* v. *Planel,* 36 Cal. 578; *King* v. *La Grange,* 61 Cal. 221; *Hol-*

*lingham* v. *Head,* 4 Com. B., N. S., 388; *Carter* v. *Pyrke,* Peake, 95; *Spencely* v. *Wilmot,* 7 East, 108; *Smith* v. *Wilkin,* 6 Car. & P. 180; *Borden* v. *Keurberg,* 2 Mees. & W. 61; *Roberts* v. *Dixon,* 50 Kan. 436, 31 Pac. 1083; *Gill* v. *Staylor,* 97 Md. 665, 55 Atl. 398; *Linn* v. *Gilman,* 46 Mich. 628, 10 Nev. 46; *Davis* v. *Kneale,* 97 Mich. 72, 56 N. W. 220; *Roles* v. *Mintzer,* 27 Minn. 31, 6 N. W. 378; *McLoghlin* v. *Bank,* 139 N. Y. 514, 34 N. E. 1095; *Thompson* v. *Exum,* 131 N. C. 111, 42 S. E. 543; *Phelps* v. *Conant,* 30 Vt. 277, 282; *Aiken* v. *Kennison,* 58 Vt. 665, 5 Atl. 757; *Jones* v. *Ellis,* 68 Vt. 544, 35 Atl. 488; *Pictorial League* v. *Nelson,* 69 Vt. 162, 37 Atl. 247; *Limerick Nat. Bank* v. *Adam,* 70 Vt. 132, 40 Atl. 166; *Repass* v. *Richmond,* 99 Va. 508, 39 S. E. 160; *Hartman* v. *Evans,* 38 W. Va. 669, 18 S. E. 810; *Kelley* v. *Schapp,* 60 Wis. 76, 18 N. W. 725; *Brunnell* v. *H. S. M. Co.,* 86 Wis. 587, 57 N. W. 364; *Oliver* v. *Morawetz,* 95 Wis. 1, 69 N. W. 977; *Koehler* v. *Koehler,* 104 Wis. 260, 80 N. W. 449; *Jackson* v. *Smith,* 7 Cow. 717; *Linn* v. *Gilman,* 46 Mich. 628, 10 N. W. 46; *Chicago* v. *Greer,* 76 U. S. 726; *Corbin* v. *Flack,* 19 Ind. 459; *Palmer* v. *Hamilton* (Ky.), 24 S. W. 613; *Geremia* v. *Mayberry,* 14 Nev. 199; *Swamscot Machine Co.* v. *Walker,* 22 N. H. 459, 55 Am. Dec. 172; *McKnitt* v. *Cone,* 30 Iowa, 455; *Fitchburg R. R. Co.* v. *Truman,* 78 Mass. 401; *Mather* v. *Robinson,* 47 Iowa, 403; *Field* v. *Stubblefield,* 85 Mo. 199; *Lichtenheim* v. *Fisher,* 39 N. Y. Supp. 553, 6 App. Div. 385; *Singleton* v. *Thomas,* 73 Ala. 205; *Green* v. *Disbrow,* 56 N. Y. 304.) The measure of damages should be, not what the wheat sold produced, but what the White Australian wheat would have produced, and no such damage is alleged. (Civ. Code, sec. 3313; *Passinger* v. *Thornburn,* 34 N. Y. 634, 90 Am. Dec. 753; *Milburn* v. *Belloni,* 39 N. Y. 53, 100 Am. Dec. 403; *Parks* v. *Morris etc. Co.,* 54 N. Y. 586; *Van Wyck* v. *Allen,* 69 N. Y. 69, 25 Am. Rep. 136; *White* v. *Miller,* 71 N. Y. 118, 27 Am. Rep. 13; *Dawley* v. *Brown,* 79 N. Y. 394.)

F. J. Hambly, for Respondent.

The evidence objected to was relevant to the issue as tending to establish the probability of the warranty in issue. (Jones on Evidence, secs. 138, 139; *Holmes* v. *Goldsmith,* 147 U. S. 150, 13 Sup. Ct. 288; *Stevenson* v. *Stewart,* 11

Pa. St. 307.)    The court has a wide discretion in the matter of admissibility of evidence as tending to bear on the issue, and also for purposes of assailing credibility by proof of a collateral fact bearing upon that question.   (Code Civ. Proc., sec. 1868; *Bernardis* v. *Allen,* 136 Cal. 10, 68 Pac. 110; *Stevenson* v. *Stewart,* 11 Pa. St. 307.)   Section 1565 must govern as to its particular subject matter, and effect must be given to its words.   (*Frandzen* v. *County of San Diego,* 101 Cal. 317, 35 Pac. 897; *Gates* v. *Salmon,* 35 Cal. 576, 95 Am. Dec. 139; *Chever* v. *Hayes,* 3 Cal. 471; *Dinlor* v. *Jewett,* 88 Cal. 530, 26 Pac. 370.)

HARRISON, P. J.—Action for damages for a breach of warranty of the quality of certain personal property.

The complaint states that the plaintiff applied to the defendant to purchase from him certain seed wheat of the variety known as "White Australian," for the purpose of planting the same, and that the defendant thereupon sold to him twenty-seven thousand seven hundred and sixty pounds of seed wheat, and represented to him and warranted that the same was of the variety known as "White Australian"; that the plaintiff relied solely upon said representation and warranty, and planted the same on his land, believing that the seed wheat so planted was "White Australian"; that the seed wheat so planted produced a crop of about two hundred and seventy-five tons of hay; that the seed wheat was not the variety known as "White Australian," but was another and inferior variety, and produced a crop of hay inferior to that which would have been grown had it been "White Australian" seed wheat; and that, by reason of the premises the plaintiff had been damaged in the sum of $3,000, for which he prayed judgment.

The defendant demurred to the complaint upon the ground that it did not state facts sufficient to constitute a cause of action, and the court having overruled the demurrer he filed an answer, in which he admitted the sale of the wheat, but denied that he had represented it or warranted it to be "White Australian." The cause was tried without a jury, and the court made findings of fact in accordance with the allegations of the complaint, and rendered judgment accordingly. A motion by the defendant for a new trial was de-

nied, and from this order and from the judgment he has appealed.

1. The demurrer to the complaint was properly overruled. The point relied on in its support is that if any damages were sustained by the plaintiff they were special, and should have been specially alleged. The allegation that the seed wheat which was purchased produced a crop of hay inferior to that which would have been produced from ''White Australian'' wheat showed a breach of the contract of warranty, and entitled the plaintiff to at least nominal damages, making the complaint good as against a general demurrer (*McCarty* v. *Beach*, 10 Cal. 461). For the same reason the findings of fact in the language of the complaint are sufficient to entitle the plaintiff to a judgment in his favor. The amount of the judgment is to be determined by the evidence offered in support of the averment, and as no objection was made to this evidence, the finding thereon is conclusive.

2. Upon the trial of the cause Frank Myall was called as a witness on behalf of the plaintiff, and was permitted to testify, over the objection of the defendant that the same was incompetent, irrelevant and immaterial, that he bought some seed wheat during that season from the defendant (shown to be of the same lot from which the sale was made to the plaintiff), and that the defendant represented to him that it was ''White Australian'' seed wheat, but that upon planting it proved to be bearded wheat, and not ''White Australian.''

The defendant was a witness in his own behalf, and upon his cross-examination was asked whether he had sold seed wheat to Myall upon the representation that it was ''White Australian.'' Defendant's counsel objected thereto, on the ground that it was incompetent, irrelevant and immaterial. The court overruled the objection, and the witness answered in substance that he had not. The same objection to a similar question in reference to a sale of seed wheat by him to H. H. Main was overruled by the court, and the same answer given. After the defendant had closed his case the plaintiff called Main as a witness in rebuttal, and he testified that he had bought some seed wheat from the defendant during that season, and that the defendant had warranted to him that it was ''White Australian'' beardless wheat. This testimony was received over the objection of the de-

fendant that it was not rebuttal, and also that it was incompetent, irrelevant and immaterial.

The points chiefly urged by the appellant are that the court erred in permitting this cross-examination of the defendant, and in allowing the above testimony to be given by the witnesses Myall and Main.

It is contended by the appellant that the testimony given by Myall and Main, to the effect that the defendant warranted that the seed wheat which he sold to them was ''White Australian,'' was *res inter alios acta,* and had no tendency to show that he gave such warranty to the plaintiff; and that in receiving the testimony of Main the court also violated the rule that when a witness is cross-examined upon a matter which is collateral to the issue he cannot be impeached by evidence in contradiction of his answers on such cross-examination. It is to be noted, however, that the only objection to the cross-examination of the defendant was that the evidence sought was incompetent, irrelevant and immaterial. No objection was made on the ground that it was not proper cross-examination. The objection to the testimony of Main that it was not rebuttal was properly overruled if such testimony was otherwise admissible. It is always in the discretion of the court to permit a plaintiff in rebuttal to offer evidence in support of his cause of action.

The rule in reference to contradicting the answer of a witness given upon cross-examination which is invoked by the appellant does not wholly preclude such testimony upon collateral matters if it is relevant to the issue to be tried. It is only when the cross-examination *is* upon collateral matters *which are irrelevant to the issue* that the witness cannot be impeached by contradictory evidence. (*People* v. *Dye,* 75 Cal. 108, [16 Pac. 537]; *Crusoe* v. *Clark,* 127 Cal. 341, [59 Pac. 700].) The rule as stated by Mr. Greenleaf, section 449, is: ''A witness cannot be cross-examined as to any fact collateral *and irrelevant* to the issue *merely* for the purpose of contradicting him by other evidence if he should deny it, and thereby to discredit his testimony.'' If the collateral fact is relevant to the issue it may be shown either by the cross-examination of a witness or by direct evidence thereof. In *Attorney General* v. *Hitchcock,* 1 Ex. 99, Baron Pollock stated as the test whether a matter is collateral or not: ''If the answer of the witness is a matter

which you would be allowed on your part to prove in evidence; if it have such a connection with the issue that you would be allowed to give it in evidence, then it is a matter on which you may contradict him." In *People* v. *Devine,* 44 Cal. 452, the court stated that the rule is subject to the qualification that contradictory evidence may be received if it is relevant to the issue to be tried; and reversed the judgment of the lower court for its error in excluding certain evidence offered for the purpose of contradicting the answer of a witness given upon her cross-examination upon a collateral subject, on the ground that it was upon a matter relevant to the issue then upon trial; and in *People* v. *Chin Mook Sow,* 51 Cal. 597, after stating the rule, the court said: "But when the question asked on cross-examination calls for a response in respect to a matter which the party asking the question would have the right to prove as an independent fact, the rule does not apply."

Evidence is at all times to be confined to the issue, but "It is not necessary that it should bear *directly* upon the issue. It is admissible if it *tends* to prove the issue, or constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it." (Greenleaf on Evidence, sec. 52a.) Section 1870 (15) of the Code of Civil Procedure authorizes evidence to be given, upon the trial of a fact, of any other facts from which the facts in issue are "logically inferable." An "inference" is "a deduction which the reason of the jury makes from the facts proved" (Code Civ. Proc., sec. 1958), and "is founded upon such a deduction from those facts as is warranted by a consideration of the course of business or the particular propensities of the person whose act is in question" (Section 1960 [2]). Section 1868, Code of Civil Procedure, declares: "Evidence must correspond with the substance of the material allegations and be relevant to the question in dispute. Collateral questions must therefore be avoided. It is, however, within the discretion of the court to permit inquiry into a collateral fact when such fact is directly connected with the question in dispute and is essential to its proper determination, or when it affects the credibility of a witness." The direction in this section that collateral questions are to be "avoided" indicates that they are not absolutely excluded from consid-

eration. Whether the collateral fact upon which the evidence is offered is directly connected with the matter in dispute and is essential to its proper determination is by the concluding portion of the section placed within the discretion of the trial court for primary determination. Unless it can be seen that the evidence is without any weight whatever in determining the issue the action of the court in receiving it will not be reversed.

The tendency of modern decisions is to admit any evidence which may have a tendency to illustrate or throw any light on the transaction in controversy, or give any weight in determining the issue, leaving the strength of such tendency or the amount of such weight to be determined by the jury; and in determining the relevancy of evidence that may be offered upon an issue of fact much depends upon the nature of the issue to sustain which or against which it is offered, and a wide discretion is left to the trial judge in determining whether it is admissible or not. Mr. Thayer, in the introduction to his "Cases on Evidence," says: "No precise or universal test of relevancy is furnished by the law. The question must be determined in each case according to the teachings of reason and judicial experience"; and Mr. Stephen, in his Digest of the Law of Evidence, says (chapter I) : "The word 'relevant' means that any two facts to which it is applied are so related to each other that, according to the common course of events, one, either taken by itself or in connection with other facts, proves or renders probable the past, present or future existence or nonexistence of the other."

Under these principles it cannot be said that the testimony of either Myall or Main was utterly irrelevant to the issue before the court, or that it was not entitled to any weight in the determination of that issue or of the credibility of the defendant as a witness. The issue to be determined was whether the defendant had warranted the wheat which he sold to the plaintiff to be "White Australian"; and the court was required to determine the credibility and weight to be given to his testimony denying that he had so warranted it. Evidence of any collateral fact which had a legal bearing in determining these questions was relevant and admissible, and entitled to consideration.

The defendant had only one quality of seed wheat for sale. He had received that upon an order given by him for "White Australian" seed wheat, and had been told by the party from whom he purchased it that it was "White Australian" wheat, and he so stated to the plaintiff and to other purchasers. The plaintiff testified that he warranted it to him to be "White Australian" wheat. The defendant denied that he made such warranty. If now, under this state of the evidence, it could be shown that in all his other sales from this lot of wheat defendant had warranted to the respective purchasers that it was "White Australian" wheat, such testimony would be relevant for the purpose of showing his course of business in selling the wheat, and it would tend to create a probability that he had made the same warranty in his sale to the plaintiff. The number and frequency of the sales in which the warranty had been made, and their proximity in time to the sale made to the plaintiff, would be circumstances addressed to the discretion of the court in determining the relevancy of the testimony; and unless it should clearly appear therefrom that the court had abused its discretion its action in admitting the evidence could not be regarded as error. These circumstances would also be addressed to the jury in determining the inference to be drawn from the testimony, or the strength of the probability in support of which it was introduced. The weight or conclusiveness to be given by the jury is entirely distinct from the question of the relevancy of the testimony. If the fact offered to be shown was proper for their consideration in determining the issue the court was justified in submitting it to them. (See *People* v. *Arnold,* 15 Cal. 476.) No personal element, such as the skill, ability, capacity or financial responsibility of the respective purchasers, entered into the consideration for the respective transactions; and as the defendant testified that he made the sales to Myall and Main upon the same condition as that made by him to the plaintiff, the evidence offered would at the same time have a bearing upon the weight to be given to his testimony in contradiction of that of the plaintiff in reference to making a warranty. As such testimony would have some relevancy to the issue it would in the discretion of the court be admissible, either upon cross-examination of the defendant or in

rebuttal; and it would also be admissible as direct evidence of the plaintiff's cause of action. In *Lowenstein* v. *Lombard*, 164 N. Y. 324, [58 N. E. 44], upon the issue whether a steamship agent had authority to make a contract for the transportation of merchandise without requiring a declaration of its value, evidence that he had made contracts with other parties, dispensing with such declaration, was held to be properly admitted on the ground that it was "competent as direct evidence for the purpose of defining the contract which was actually made."

Probability is an element which addresses itself to the reason, and is frequently invoked in matters of human conduct and experience for determining the existence or nonexistence of a fact. In civil cases a jury is authorized to determine an issue of fact as its probability or improbability may appear to them from the evidence before them. Hence any evidence tending to show either of these conditions is relevant to the issue to be determined by them. "If the evidence offered conduces in any reasonable degree to establish the probability or improbability of the fact in controversy it should go to the jury." (*Insurance Co.* v. *Weide,* 11 Wall. 438.) *Swain* v. *Cherry,* 41 N. H. 232, was an action upon a verbal contract between the parties for hauling certain lumber, and the issue before the court was the price for which it was agreed to be hauled. The trial court rejected certain testimony offered by the plaintiff to prove what the defendant paid to other persons for hauling a portion of the same lumber between the same points. Upon appeal the supreme court held that the evidence so offered was competent as tending to show whether it was probable that the price agreed to be paid was that paid by the plaintiff, and should have been received, leaving its weight to be determined by the jury. In an action for damages for fright caused to the plaintiff's horse by the blowing of a locomotive whistle, evidence that the whistle had produced the same effect upon other horses was held admissible in *Hill* v. *Portland etc. R. R. Co.,* 55 Me. 438, [92 Am. Dec. 601]. In an action for damages from fire caused by sparks thrown from a locomotive, evidence of other fires in that vicinity similarly caused is admissible "to show the probability" of the fire in question having been so caused. (*Shelton* v. *Hudson River*

*R. R. Co.,* 14 N. Y. 218, [67 Am. Dec. 155] ; *Grand Trunk R. R. Co.* v. *Richardson,* 91 U. S. 454; *Bulcher* v. *Vaca Valley etc. R. R. Co.,* 67 Cal. 518, [8 Pac. 174] ; *Steele* v. *Pacific Coast Ry. Co.* 74 Cal. 323, [15 Pac. 851].) In an action against the defendant upon his promissory note, which the plaintiff claimed to have purchased at a heavy discount, and which the defendant denied having sold, evidence that the defendant had sold other notes about that time at a discount was held admissible. (*Turner* v. *Luning,* 105 Cal. 124, [38 Pac. 687].) In *Lexington Ry. Co.* v. *Lyons,* 104 Ky. 23, [46 S. W. 209], upon the issue whether a railroad ticket agent made certain representations respecting a ticket purchased by the plaintiff, testimony of a witness that on the same occasion he purchased similar tickets and that the agent made the same representation as testified by the plaintiff was held admissible. In this case the agent had testified in cross-examination that he did not make such representation to the witness, and it was held that the testimony could be received as well upon rebuttal as in chief. In *Schmidt* v. *Packard,* 132 Ind. 398, [31 N. E. 944], where the issue was whether notes in suit had been delivered after their indorsement, evidence that other notes of the same series were similarly indorsed on the same day, and were not delivered to the indorsees, was held admissible upon the ground that the transactions were so connected in time and in language as to indicate that they were the effect of the same cause.

Under the foregoing considerations we are of the opinion that the evidence objected to by the defendant was not irrelevant to the issue before the court, and that in receiving it the court did not unwarrantably exercise its discretion.

The judgment and order are affirmed.

Cooper, J., and Hall, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 17, 1907.