[Civ. No. 14173. First Dist., Div. Two. Sept. 28, 1950.]

ANNETTE SPOLTER et al., Respondents, v. FOUR-WHEEL BRAKE SERVICE COMPANY et al., Appellants; and consolidated cases.

Cooley, Crowley & Gaither for Appellants.

Hallinan, MacInnis & Zamloch, James Martin MacInnis, Paul Vlautin, Jr., Michael L. Haun, James A. Toner, Maurice A. Harband and William F. Cleary for Respondents.

DOOLING, J.—Ralph T. Spolter died on July 30, 1946, from injuries received in an accident which occurred July 28, 1946. Deceased was the owner and driver of the automobile at the time of the accident. Ethel Truncale, Helen J. McNeill and Morris Roberts, who, with a Mr. Wilkie, were guest passengers of Spolter at the time of the accident were injured in the same accident. Spolter's wife and two minor children, suing for the wrongful death of Spolter, are plaintiffs in one of the combined cases, and the injured passengers,

suing for their personal injuries, are plaintiffs in the others.

The accident on July 28, 1946, occurred about 7 p. m. when the left rear wheel fell off the left rear axle of the 1942 Buick convertible owned and being driven along the highway by Spolter at a speed of approximately 45 miles per hour. Upon losing the wheel the automobile overturned resulting in the injuries outlined above. On July 20, 1946, the car had been in defendant's shop where its wheels were removed and replaced by defendant's employee in the course of relining the brakes.

The car had been driven between 314 and 320 miles from July 20, 1946, the date defendant's employee replaced the wheels, and July 28, 1946, the date of the accident. The tire on the left rear wheel of Spolter's car when the accident occurred was a Fisk Airflight deluxe, size 700 x 16, in new condition.

The jury returned verdicts for the plaintiffs. Defendant assails the verdicts on three grounds. One, that there was insufficient evidence from which the jury could draw the inferences of negligence necessary to support the verdicts; two, that even if the jury could draw the necessary inferences from the evidence to support the verdicts, as a matter of law these inferences should be held to be rebutted by the ''clear, positive, uncontradicted testimony of eyewitnesses who are unimpeached''; and three, that the necessary inferences are founded upon incompetent hearsay testimony admitted over proper objection, which error is prejudicial.

Expert witnesses testified that loose insertion of the lugs into the axle could cause the wheel on the Buick to come off. Witness Greer testified that the *only* cause could be improperly tightened lug bolts. The wheel which came off the axle and the axle itself were introduced in evidence. These were examined by the jury. The testimony indicated that at least three, and possibly four, of the five lug holes were distorted indicating that one or two lugs had never been inserted or that they had been loosely inserted and had worked out of the lug holes quickly without distorting the holes in the wheel or stripping the threads of the lug holes in the axle. All of the experts were of the opinion that if all of the lugs were properly and tightly inserted they should not have worked loose within 300 miles of driving.

The witness Steine, who was produced by appellant, testified that in 1946 he had a service station in Sonoma, that he sold a new Fisk tire to Spolter from one to three weeks prior to the accident and mounted it on the left rear wheel. The

witness Lynch, who introduced Spolter to Steine, also produced by appellant, fixed the time of this sale from two to three weeks before the accident. We are satisfied that from these facts the jury could conclude that it was reasonably probable that the Fisk tire remained on the left rear wheel from the time Steine put it there and that appellant's employees negligently replaced this wheel on July 20, thus proximately causing the wheel to come off on July 28.

It must not be forgotten that in civil cases the law does not require absolute demonstration but only reasonable probability to support the finding of the jury. Juries in civil cases are so instructed every day. (See Cal. Jury Instructions, Civil, 3d rev. ed., Nos. 21, 21-A, 21-B.) This court recently had occasion to point out that "moral certainty is not required in civil cases; there 'reasonable probability' . . . is normally sufficient and is used as a counterpart to 'preponderance of the evidence.' " (*Wirz* v. *Wirz*, 96 Cal.App. 2d 171, 175 [214 P.2d 839].) "In civil cases which are decided in favor of the litigant upon a mere preponderance of evidence, the rule of decision is, after all, but a rule of probability, and this is well recognized. Says Greenleaf: 'In civil cases . . . it is not necessary that the minds of the jurors be freed from all doubt; it is their duty to decide in favor of the party on whose side the weight of evidence preponderates, and according to the reasonable probability of truth.' " (*Liverpool etc. Ins. Co.* v. *Southern Pac. Co.*, 125 Cal. 434, 440-441 [58 P. 55]; and see 10 Cal.Jur., Evidence, § 94, pp. 791, 793; *Travelers Ins. Co.* v. *Industrial Acc. Com.*, 33 Cal.2d 685 [203 P.2d 747]; *Fireman's Fund etc. Co.* v. *Industrial Acc. Com.*, 93 Cal.App.2d 244 [208 P.2d 1033].)

It is equally well settled that if conflicting inferences may reasonably be drawn from the evidence, even though it is uncontradicted, which of such inferences shall be drawn is entirely a jury question. Said the court in *Mah See* v. *North American Acc. Ins. Co.*, 190 Cal. 421, 426 [213 P. 42, 26 A.L.R. 123]:

"This court has frequently held that even though all of the facts are admitted or uncontradicted, nevertheless, if it appears that either one of two inferences may fairly and reasonably be deduced from those facts, there still remains in the case a question of fact to be determined by the jury . . ., and that the verdict of the jury . . . thereon cannot be set aside by this court on the ground that it is not sustained by

the evidence.'' (See to the same effect *Webster* v. *Board of Dental Examiners,* 17 Cal.2d 534, 539-540 [110 P.2d 992]; *Hamilton* v. *Pacific Elec. Ry. Co.,* 12 Cal.2d 598, 602-603 [86 P.2d 829]; *Tobola* v. *Wholey,* 75 Cal.App.2d 351, 355 [170 P.2d 952]; *Gute* v. *Halstead,* 75 Cal.App.2d 369, 370 [170 P.2d 1016].)

■ It is corollary of the last stated rule that in order to support an inference based on circumstantial evidence it is not incumbent upon the plaintiff to exclude the possibility of every other reasonable inference from the proved facts. ''It is not necessary, in order to establish a theory by circumstantial evidence, that the facts be such and so related to each other that such theory is the *only* conclusion that can fairly or reasonably be drawn therefrom, because it is now settled law that 'circumstantial evidence in civil cases, in order to be sufficient to sustain the verdict, need not rise to that degree of certainty which will exclude every reasonable conclusion other than that arrived at by the jury.' '' (*Katenkamp* v. *Union Realty Co.,* 36 Cal.App.2d 602, 617 [98 P.2d 239]; *Vaccarezza* v. *Sanguinetti,* 71 Cal.App.2d 687, 691 [163 P.2d 470]; *Hilson* v. *Pacific G. & E. Co.,* 131 Cal.App. 427, 431-432 [21 P.2d 662]; *Chalmers* v. *Hawkins,* 78 Cal.App. 733, 739 [248 P. 727]; opinion of Supreme Court denying a hearing in *Estate of Wallace,* 64 Cal.App. 107, 116 [220 P. 682]; *cf. Barham* v. *Widing,* 210 Cal. 206, 214-215 [291 P. 173].)

■ Where, as in this case, circumstantial evidence is relied upon, the jurors may draw upon their own experience to determine the proper inferences to be deduced insofar as matters within the realm of common experience are concerned. Our courts have more than once quoted with approval the following statement of the proper function of the jury in a case based on circumstantial evidence from *New England Glass Co.* v. *Lovell,* 7 Cush. 319, 321:

''In applying circumstantial evidence which does not go directly to the fact in issue, but to the facts from which the fact in issue is to be inferred, the jury have two distinct duties to perform: First, to ascertain the truth of the fact to which the evidence goes, and thence to infer the truth of the fact in issue. This inference depends upon experience. *When this experience is of such a nature that it may be presumed to be within the common experience of all men of common education moving in the ordinary walks of life,* there is no room for the evidence of opinion; *it is for the jury to draw the inference.*'' (Emphasis ours.) (*Shafter* v. *Evans,*

53 Cal. 32; *Redfield* v. *Oakland C. S. Ry. Co.*, 112 Cal. 220, 225-226 [43 P. 1117] ; *Phoenix Assur. Co.* v. *Texas Holding Co.*, 81 Cal.App. 61, 69 [252 P. 1082].)

In this day and place when the ownership and operation of automobiles has become an almost indispensable commonplace of our normal life the jurors from their common experience are in a position to draw the inference that a new tire mounted on a wheel from two to three weeks before the accident would in the meantime with reasonable probability not have to be replaced. Since reasonable probability is all that the law requires we cannot hold that the evidence above summarized is insufficient to support the jury's verdict.

Appellant points to the fact that the witness Steine, who testified that he originally mounted the Fisk tire on the left rear wheel, also testified that a day or two before the accident Spolter returned to his service station in Sonoma at which time the Fisk tire was in the turtleback of Spolter's car with a leaking valve which Steine repaired. The jury was entitled to disbelieve this part of Steine's testimony. The witness Roberts testified that he was with Spolter from the time that Spolter left San Francisco on July 27 for Sonoma and the Agua Caliente Hotel except when the two retired to their rooms to sleep, and that Spolter's automobile was not taken to any service station or garage for any kind of work on that trip. Mrs. Spolter testified that Spolter on July 26 returned home early from work at about 2:30 in the afternoon. Since his normal business was in and about San Francisco, he reported at the Call-Bulletin office every day and on that day, and had a radio program on KSFO in San Francisco on that day, the unlikelihood of Spolter's driving approximately 90 miles round trip to Sonoma from San Francisco on Friday, July 26 may well have impressed the jury. If they concluded that Spolter did not visit Steine's service station in Sonoma "a day or two before his accident" they could not credit that portion of his testimony, but they were still entitled to believe that he had earlier sold the Fisk tire to Spolter and mounted it on the left rear wheel of his automobile, particularly in view of the witness Lynch's corroboration of that circumstance. "In this state the credibility of a witness and the weight to be accorded to his testimony are questions directed to the trial judge, who under proper circumstances may accept all or such part of the testimony of any witness as he believes to be true, or may reject all or any part which he believes to be untrue." (*Bechtold* v.

*Bishop & Co., Inc.,* 16 Cal.2d 285, 291 [105 P.2d 984]; *Wright* v. *Delta Properties, Inc.,* 79 Cal.App.2d 470, 476 [180 P.2d 57].)

Appellant's second point is that even if the evidence recited would, if uncontradicted, support the inference that the wheel was negligently attached by his employees on July 20 when the brakes were relined the inference was in fact rebutted by the clear, positive and uncontradicted testimony of eyewitnesses who are unimpeached. (*Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Crouch* v. *Gilmore Oil Co.,* 5 Cal.2d 330 [54 P.2d 709]; *Maupin* v. *Solomon,* 41 Cal.App. 323 [183 P. 198].) The rule of these cases has more recently been restated with some shift of emphasis. (*Hicks* v. *Reis,* 21 Cal.2d 654 [134 P.2d 788]; *Blank* v. *Coffin,* 20 Cal.2d 457 [126 P.2d 868]; *Huddy* v. *Chronicle Publishing Co.,* 15 Cal.2d 554 [103 P.2d 421].)

The Hicks case presents an extended discussion of the rule (21 Cal.2d at pp. 659-661):

"Appellant contends that the inference was rebutted as a matter of law. Such contention is not sound. The trier of the facts is the exclusive judge of the credibility of the witnesses. (§ 1847, Code Civ. Proc.) While this same section declares that a witness is presumed to speak the truth, it also declares that 'This presumption, however, may be repelled by the manner in which he testifies, by the character of his testimony . . . or his motives, or by contradictory evidence.' In addition, in passing on credibility, the trier of the facts is entitled to take into consideration the interest of the witness in the result of the case. (See cases collected 27 Cal.Jur. 180, § 154.) Provided the trier of the facts does not act arbitrarily, he may reject *in toto* the testimony of a witness, even though the witness is uncontradicted. (*Blank* v. *Coffin, supra*; *Hinkle* v. *Southern Pacific Co.,* 12 Cal.2d 691 [87 P.2d 349]; *Barsha* v. *Metro-Goldwyn-Mayer,* 32 Cal.App. 2d 556 [90 P.2d 371]; *Burke* v. *Bank of America etc. Assn.,* 34 Cal.App.2d 594 [94 P.2d 58]; *People* v. *La Fleur,* 42 Cal. App.2d 50 [108 P.2d 99]; see cases collected in 27 Cal.Jur. 182, § 156; 8 A.L.R. 796.) As a general rule, therefore, the trier of the facts is free to disbelieve the evidence as to the nonexistence of the fact of permission, and to find that it does exist solely on the basis of the inference. (*Blank* v. *Coffin, supra*; *Bushnell* v. *Yoshika Tashiro, supra* [115 Cal. App. 563 (2 P.2d 550)]; *Day* v. *General Petroleum Corp.,* 32 Cal.App.2d 220 [89 P.2d 718].) In discussing the rule

that the trier of the facts may find the fact of permission to exist based on the inference even where the evidence contrary thereto is uncontradicted, the court, in *Market Street Ry. Co.* v. *George,* 116 Cal.App. 572, 576 [3 P.2d 41], stated: 'It has always been the rule that courts and juries are not bound by mere swearing no matter how positive, unless it be credible swearing. It may bear within itself the seeds of its own destruction, as where it is inherently improbable, or its destruction may be wrought from without, as where the person swearing is in some manner impeached. In either case court and jury are entitled to disbelieve the testimony if they choose, and if they do refuse it credence it is of no more effect than if it had not been given. It disappears from the case and the inference opposed to it is no longer contradicted.'

"To these well settled rules there is a common sense limited exception which is aimed at preventing the trier of the facts from running away with the case. This limited exception is that the trier of the facts may not indulge in the inference when that inference is rebutted by clear, positive and uncontradicted evidence of such a nature that it is not subject to doubt in the minds of reasonable men. The trier of the facts may not believe impossibilities. When the rebutting testimony is of such a nature that the minds of reasonable men cannot differ on the subject, then the trier of the facts cannot, and should not be permitted to, indulge in the inference. If there is any reasonable doubt as to whether the inference, as a matter of law, has been rebutted, that doubt should be resolved in favor of submitting the question to the trier of the facts. This limited exception was expressed as follows in *Blank* v. *Coffin, supra,* at page 461: 'If the evidence contrary to the existence of the fact is clear, positive, uncontradicted, and of such nature that it cannot rationally be disbelieved, the court must instruct the jury that the nonexistence of the fact has been established as a matter of law,' citing *Engstrom* v. *Auburn Auto Sales Corp.,* 11 Cal.2d 64 [77 P.2d 1059]; *Crouch* v. *Gilmore Oil Co., Ltd.,* 5 Cal.2d 330 [54 P.2d 709]; *Maupin* v. *Solomon,* 41 Cal.App. 323 [183 P. 198]. In the same case, after pointing out that the jury is the sole judge of the credibility of the witnesses and may disbelieve an uncontradicted witness if there is any rational ground for doing so, the court stated (p. 461): 'In most cases, therefore, the jury is free to disbelieve the evidence as to the nonexistence of the fact and to find that it does exist on the basis of the inference.' "

■ An examination of the testimony of the three witnesses relied on by appellant to destroy the inferences of the jury, in the light of the other testimony in the case, satisfies us that the jury had a rational basis for disbelieving their testimony. The witness Maria O'Mea testified that she met Spolter at the Agua Caliente Hotel on July 21, that he complained to her that he had been having a great deal of trouble with tires and told her: "At this point I have an undersized tire on the car. I will have to get a new one as soon as I get back to San Francisco"; and that he walked over to the car and showed her the tire on the left rear wheel. The witnesses Igel and Fulger sold Spolter a new Atlas tire on July 23. They mounted it on the right rear wheel. They both testified that at that time the tire on the left rear wheel was also badly worn and that they tried to sell Spolter a new tire for that wheel but that Spolter said that he could not afford to buy it.

Set out thus baldly against one another the inconsistency in the two stories speaks for itself. Miss· O'Mea remembers that Spolter showed her an undersized tire on the left rear wheel of his automobile because he pointed it out to her and said: "I will have to get a new one as soon as I· get back to San Francisco." Fulger and Igel remember that Spolter had a worn tire on his left rear wheel two days later because they tried to sell him a new one to replace it and he refused to buy it. It would require no particular acuteness on the part of the jurors to view such inconsistent testimony with distrust.

Add the facts that as early as May Spolter ran a story in his column in the Call-Bulletin about his own difficulty in getting new tires, that he had an income of from $1,000 to $1,200 per month and that the witnesses were testifying to what, to them, must have been rather casual incidents which had occurred over two years before their testimony was given and the jurors as reasonable men and women were not bound to give credence to their stories.

■ Finally appellant complains of the admission of Mrs. Spolter's testimony that she knew of no new tires being purchased by her husband in July and from an examination of his checks for that period found no check for any such purchase. She supported this by testimony that it was her husband's custom to pay for all purchases by check and to draw checks to cash for pocket money. The checks were produced and introduced into evidence.

As to Mrs. Spolter's lack of knowledge of any purchase of

new tires, if the admission of that evidence was error, we cannot hold it prejudicial. The court stated: "It is just so far as her knowledge goes. . . . That is limited to her knowledge." We cannot find how the jury could be misled since it was made clear that all that Mrs. Spolter was testifying to was in effect that no such purchase had been brought to her attention and it clearly appeared that she had not been with Mr. Spolter in the car during most of that period when any such purchase might have been made. We must ascribe ordinary common sense to the members of the jury and we can find no prejudice in the admission of this answer.

Insofar as the checks and the supporting testimony of Spolter's habit of paying by check are concerned we think that the evidence had probative value in what was necessarily a case based upon circumstantial evidence. "Where the evidence is entirely circumstantial a party should not be deprived of competent, relevant evidence because it is not of great strength. Many threads may make a rope." (*Whittemore* v. *Lockheed Aircraft Corp.*, 65 Cal.App.2d 737, 753 [151 P.2d 670].)

The absence of any check to a dealer in tires drawn by Spolter during that period supported by Mrs. Spolter's testimony of his habit of paying for all purchases by check had some probative value. "The tendency of modern decisions is to admit any evidence which may have a tendency to illustrate or threw any light on the transaction in controversy, or give any weight in determining the issue, leaving the strength of such tendency or the amount of such weight to be determined by the jury; and in determining the relevancy of evidence that may be offered upon an issue of fact much depends upon the nature of the issue . . . and a wide discretion is left to the trial judge in determining whether it is admissible or not." (*Moody* v. *Peirano*, 4 Cal.App. 411, 418 [88 P. 380]; *Firlotte* v. *Jessee*, 76 Cal.App.2d 207, 210-211 [172 P.2d 710]; *Estate of Ades*, 81 Cal.App.2d 334, 342 [184 P.2d 1]; *Schomaker* v. *Provoo*, 96 Cal.App.2d 738, 740 [216 P.2d 562].)

The judgments and orders denying motions for judgments notwithstanding the verdicts are affirmed.

Nourse, P. J., concurred.

A petition for rehearing was denied October 28, 1950.